Good morning, may it please the Court. I'm Russ Smoot. I represent the United States in this interlocutory appeal. I would like to try to reserve three minutes for rebuttal. So I'm used to having the government up as the... Can we savor the moment? No, again, I'm used to going first or reserving time for rebuttal. But we'll see how it goes. I understand that I'll have the time remaining that I have. Your Honors, this is a case, again, this is an interlocutory appeal of a district court's decision to suppress cocaine and methamphetamine that was found inside a vehicle that was administratively seized in Oregon. Because it's the Keystone Cops case. The bump and run case. If we sort of imagine what happened, you know, it could be... It's a bit like those Keystone Cops. You're probably too young to have ever seen those, huh? They look like, you know, they're running after the... Well, I am unfamiliar with the Court's reference, Your Honor. And I think really what it boils down to, Your Honor, is in this case, DEA was faced with a dilemma. In mid-December of 2004, in the process of conducting a wiretap investigation, they received telephone calls... We really are familiar with it. Excuse me? We are familiar with the facts. Trust me. They were in a tough spot. And so they came up with this really harebrained scheme involving a sort of bumping and then sort of the pretense that the driver was drunk. And then in comes the purported burglar or the... Oh, by the way, leave your keys in the ignition when you come. And then the chase down the street and back. The tossing of the purse out the window. Or the cell phone. I don't know. You know, it's one of those things that we wouldn't really want to write an opinion admitting our government does that kind of thing. It would make us look so silly. Your Honor, I think that the point in the case, Your Honor, is that DEA, in fact, operated outside of the box into what the courts might normally see as a seizure method at the end of a case. At least. The difficulty, Your Honor, is that while they operated outside of the box, DEA did not operate outside the prescriptions of the law, as the court said. What if they had bumped, if the truck had hit the car harder than intended and had caused a whiplash? Or had caused the airbags to deploy? You know, and maybe the ones where seat belts and it's caused them some injury. Would they still be just operating outside the box? Respectfully, Your Honor, I would begin to answer by saying that those aren't the facts of the case. No. Are you sure those aren't the facts? Yes, Your Honor. The testimony is clear. You think the fact I said what if, do you think that I knew that? Well, I understand that, Your Honor. I just wanted to make clear that under the facts of the case, it's a different scenario. You're really wasting time, you know. You're sort of sitting there talking. I asked you a what if question. If you don't want to answer it, that's okay. But you'll have to lecture me about the fact that these are not the facts of our case and that the difference might be material. We can figure that out next. But are you going to answer the question? Yes, Your Honor. Okay. Start now. Under the court's hypothetical, then there may be collateral or other type of action. If there was some injury, then there may be a civil action for damages, physical or property damages to the vehicle. I believe that that is outside of the actual criminal action. Okay. What if it really applies to this effect on our case, not on any other cases? I mean, there might still be a civil case now, for all we know. These defendants might have a civil case for just being bumped or for taking their property. So we're not talking about civil cases and what other remedies might be available. We're really talking about effect on the criminal case. Okay. So there's no point in sort of playing possum with me by saying, oh, there are these other things. You know what I'm asking. The question, if you don't, you're really much less experienced and you look to me like you are. The question is, what if you're now five minutes into the question with no useful answer out of you yet. So I'm going to give you one more try. And if you don't answer this time, I'm going to give up. Are we together on that? Yes, Your Honor. Okay. So let's start from the top. What if they had bumped the car, the truck, harder than intended and caused an injury? The reasonableness standard, Your Honor, would still apply. And it may very well be that the action by DEA rose to the level of a far end of the spectrum where it was unreasonable in the execution of the warrant. That's why I would say that under the facts of this case, it's not to the unreasonable end of the spectrum such as the hypothetical that the court poses. Okay. Now let's move on to the other aspect, which is they took the car. They took everything that was in it. They salvaged, through their heroic rescue efforts, the purse and the cell phone. But what else did they leave in the car of personal effects that were not subject to forfeiture? They swept up everything. What if there had been a laptop in the trunk that had all of their personal stuff on it? What would have happened then? I'm sorry. There were personal items that were left in the vehicle. One was a backpack that was testified that it could have contained controlled substance. It was of that size. All of the personal items that were within the vehicle were left in the vehicle. Yes, but out of the control and accessibility, were they not to the passenger who was not implicated? She wasn't charged with anything, was she? No, Your Honor. Okay, so what happened is that on the seizure of the government's vehicle, by virtue of the forfeiture statute, it took everything that was inside it and impounded it, basically, beyond the control or even notice of the victim in this case that the government did have possession of it. So for 90 days, they were without. I'm going to focus on the passenger. The passenger was without any personal effects that the DEA agents didn't take the trouble to retrieve and give back. And I understand that, well, first of all, what was of that nature? CDs and a camera, something like that? Yes, that's my understanding. That's it. The testimony, in fact, from the passenger was that she was simply without a toothbrush. Okay. There were no items. Let's suppose, then, following Judge Kaczynski's path, let's suppose that also in the car, unseen by anybody at the time so they didn't pull it out, was a laptop that had all their tax records in it, all the financial data, this woman who had a business or whatever. And so she was operating on the assumption that all of her personal financial stuff had been taken by a thief. And so 90 days, she's without all of that information. Where does that fall on the spectrum of reasonableness? Spectrally, I don't believe that that falls under the spectrum that would result or the remedy would be exclusion, the exclusionary rule of drugs that were in the vehicle. If a person is aggrieved because of the civil seizure and forfeiture process, then there may very well be the return of the property during the pendency of the forfeiture process. Well, they can't get it back because they don't know it's been forfeited. Well, they were advised that it had been forfeited. They were provided for. No, no, no, no. For 90 days, they didn't know it was forfeited. They thought it had been stolen by a third party. In that case, Your Honor, then if there was damage, if there was financial, if there was some type of damage caused by the law enforcement agency. Let's say she lost her business, okay? As a result of this, all of her tax clients left her because she couldn't do the tax returns for them. So she went out of business. Now she's got a million-dollar claim against the government. Say that's a damage claim, okay? You're saying that has no bearing on the reasonableness of the search, of the seizure, and the method, that they went through a method that basically foreclosed their ability to let her know that they really had her laptop, that she could get it back. They would have voluntarily given it back? You don't think that that would bear on the reasonableness of the execution of the seizure? Yes, I don't think so. Okay. Interesting. In this case, one notice was given, no claim was ever filed for any other property. Is that right? No claim was ever filed. The testimony in the case was by the witness, was that neither herself nor the defendant advised the law enforcement officers that they had personal items that they were looking for at the time. The forfeiture notice was returned signed to DDA. No claim was ever filed. As noted in the record, the agent in charge or the case agent in charge of it had never received any claim or anything. The items were still available, and I guess I can continue. Any continuation of this answer would be off the record of the case. Okay. I'm not sure if I have rebuttal or not because I am old. What would have happened if they had seized the car in the ordinary way? What would have happened to the other? What would have been entitled to seize? I believe they would have been able to seize the car as is if there were personal items in it, or, quite frankly, your Honor, change that has fallen below the seat, then persons are allowed to make claims pursuant to the seizure, pursuant to Rule 41, or contest the forfeiture action, and as notice of the forfeiture provides, the aggrieved party or interested party in interest could request return of certain items that are not believed to be necessary to the forfeiture, and that can be determined at that time when a claim is made. And in normal circumstances, when is notice of forfeiture given so that they can make that claim? How quickly is that notice given to them? Well, statutorily, the statute requires as soon as reasonably possible, not beyond 60 days unless headquarters of the law enforcement agency. So it would be 90 days total statutorily without the necessity of seeking a judicial continuation of that. Case law says that notice of the forfeiture, I guess in summary, is more of a flexible thing. If an item is seized at the exact same time a person is arrested, then that's a different situation. But if they picked the car up on the street, if they had just waited until they got out of the car, then they went in and took the car out of the motel where they were staying and whatever, if that had been the circumstance, then in the normal, and they weren't worried about tipping anybody off, then I'm just trying to get a sense. Then the normal course, they would have waited automatically 60 days, or they would have said, you know, we've got your car. Now, if you've got anything in it that we can't forfeit, you think, then now's the time to make your claim. Well, certainly the circumstances would dictate, but I believe that it would occur within the 60 days if the, I believe, five or six prerequisites of the continuation were not available. And if the subject of the investigation knows at the time that the car is seized, that it's being seized under an 881 forfeiture, isn't the typical scenario that the agent will give actual notice to the subject, we've seized your car and we're going to begin forfeiture proceedings against it? Correct. In fact, the individual, the actual owner, registered owner of the vehicle, was given actual notice within the 60-day period. He was given notice at the time of his arrest on February 13th of 2005. Within 60 days? It was. Before that arrest occurred, DEA did seek the 30-day extension. So the owner of the vehicle was given actual notice within the 60 days, but then the written notice was delayed. Okay. But as far as the people who, the woman whose possessions were in the car, how soon did then she have notice? Within the 90 days. Within 90 days. So the owner didn't tell her, apparently? Apparently not, Your Honor. At the time. Because he didn't believe that it had been swiped, right? So the cops lied to him and he didn't buy it. Well, at the time, the defendant who was driving the car was under indictment, so. I understand. Well, the registered owner thought that the driver of the car, the passenger, had ripped off his dope, right? The ruse worked. I don't know that necessarily DEA expected that ruse to work. That's not my question. The record shows, does it not, that the ruse worked, but that the owner of the car thought that the drugs had been ripped off by the driver and the passenger. Isn't that what the wires showed after the seizure? I would say that I would have to qualify that answer as yes, because at the time, the registered owner of the vehicle also discontinued use of his telephone and obtained new telephones. He didn't buy it. It's speculative as to whether he knew what happened really happened, but he did take some defensive action, Your Honor, yes. Thank you. Okay, we'll hear from Lieutenant. Your Honor, my name is Jim Egan. I was retained to represent Mr. Ascension Alvarez at the trial court level. I am appointed to represent him at this level. It is the position of Mr. Alvarez Ascension that the seizure of his vehicle, although authorized under a couple of different theories, was done so in an unreasonable manner. It was done so by assaulting with a vehicle. He and his common law wife. It was done by unlawfully imprisoning them by forcing them off of the highway and into a parking lot. It was done by assaulting both of them, most particularly Ms. Valero. But how is that different from using a battering ram, which we understand from hearing multiple similar complaints, and ordering the occupants of the house at gunpoint into the living room and handcuffing people? I mean, we don't normally examine the manner of execution to determine the lawfulness of the seizure under a warrant, do we? I think we do, Your Honor. And I think we do that statutorily with the idea that there's a knock-and-announce requirement. But there's a specific statute that covers that. But am I wrong? As I read the Supreme Court cases, what they have told us basically, as I read them, is that we don't look to the manner of execution normally. All we're asking is, was there probable cause? And at that point, unless the governmental conduct rises to such an extreme and outrageous conduct that our sensibilities are offended under, I guess, the due process clause, then do we look at the manner of execution. I think that some of the Supreme Court cases, and most particularly Cherry, has some interesting language that says that – that talks about the manner of executing a particular stop or detention and a seizure or a search of that particular individual. And so I think the Banks case – I think there are several cases that talk about the fact that the manner of executing the warrant is important, and that it has – also has to be reasonable as well as there has to be a – Do we count? And that's a lot of illegal activity, do we not? We issue bumper beeper orders knowing full well that they're going to have to break into somebody's garage in order to install them. We issue Title III orders knowing full well that the agents are going to have to commit burglaries in order to get into the office or home of the person whose place is being bugged. We permit agents to buy and sell drugs. I mean, they do all sorts of things that you might think are outrageous, but the question is whether or not under the Constitution it's unreasonable. We do not – or at least it's not my opinion, Your Honor, that any magistrate would issue an order to tell these people that you're – we're stealing – your car is stolen. We're actually stealing it, but we're going to tell them and lie to them that your car is stolen, not just your car. But we don't – we don't require the agents to get approval from the magistrate to commit the burglary, do we? To commit – In order to install the Title III listening device. I mean, there's a certain – I guess there's a certain element of we've given you an order. You've demonstrated a probable cause that crimes are being committed, and we understand that you're in the middle of investigating this crime. We don't really want to know how you're going to do this, but we will reserve the right on subsequent motion by the defendant who feels he's been aggrieved by your conduct to visit it later. But it's not part of the warrant application process. I would respectfully disagree that in some respects, Judge, there is certainly the requirement that warrants be served during only late daylight hours. And warrants must be served within a particular time. Unless in a particular case the showing is made that – Yeah, but there was no warrant in this case, right? There was none, Your Honor. But despite the fact that there was not a warrant in this particular case, I can imagine a spectrum or a continuation of conduct that at some point I think everyone would agree without any question whatsoever, that's unreasonable. If this young lady – Trias. I mean – Trias. Knock, knock. I didn't understand, Your Honor. Maybe just Tolman can help me out here. Well, I think what Judge Kaczynski was going to ask you to do is, you know, give us a hypothetical where you think that would be the case. Let's see what all three of us – See if all three of us agree. It's going to be tougher with some than with others. In order to make an interpretation that Ms. Valero Perez was not actually in possession of drugs, she would be a strip search in the parking lot of that restaurant. That would shock my conscience. It shocked Mrs. Perez's conscience that she was searched by a male officer in the parking lot. But would that give rise to the district court's ability to suppress the drugs vis-à-vis your client? Or would that give the female passenger a federal tort claim and a Section 1983 action against the agents? And perhaps even render them criminally liable under 240-242 for criminal civil rights violations? I think both. And I think that – The district court could do both? Yes. But if her position is that the drugs weren't mine and I was just a passenger in the vehicle, how would she have standing to request the district court to suppress the drugs that are being admitted into evidence against your client? Well, I don't think she does have standing. So then the district court couldn't suppress the drugs that were found as a result of what happened to her. I don't know. In Ibarra, didn't we say that relying on Wren did not justify search or seizure? Were those cases where searches or seizures were conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests, such as, for example, seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant or physical penetration of the body, citing Wren? I guess you're arguing that – and I think Judge Tallman's question at the beginning assumed there are extraordinary circumstances. You don't get a blank check to conduct a search. And I don't know that we've limited the remedies purely to damages. I would agree with that also, Your Honor, and I would think that under the Fourth Amendment of the Constitution, that the unreasonableness of this particular seizure – Well, it's an unreasonable search and unreasonable seizure, so presumably there is some meaning to how you would do it. And – but I'm still intrigued. I don't understand how she would have – if the drugs are not being used against her, why would there be a remedy of suppression of the evidence as against him? I think that the – well, he, of course, suffered several of these problems also. Right, but let's just stick with her for the time being. But sticking with her – I want to try and see – we're trying to proceed – If she was alone in the automobile, he was not there, and these actions took place, and she was subjected to this assault, search, seizure, lying to theft of her property, I would think that the court would be able to suppress the evidence based upon the fact – should suppress the evidence based upon the fact that it's outrageous. The problem with strip search and broadly cavity searches, you haven't built any facts that would justify that kind of search. You know, they have information that the drugs are in the car, and then they go and do something completely different, which is to strip search her in the parking lot. Yeah, I mean, that's outrageous. I guess you could also say, you know, while they're down in the parking lot, they beat her up or they rape her or something like that. You know, you can imagine anything. But it's not a really helpful hypothetical, because what you've got to come up with is a hypothetical that's shocking that pertains to this evidence and this seizure, but that's done in an outrageous manner. So somehow they get – what they're out to do is to get the drugs they know are in the car without making a normal arrest. And now they're going to try to achieve that end in some way that we all agree would be outrageous. And I'm still waiting to hear that. You know, not the sort of collateral, oh, well, you know, they take the woman outside and they do things to her they shouldn't, because that really has nothing to do with our search. It would be more outrageous if the officers had said, you are now 300 miles from home in central Oregon on December 18th, and it's cold outside. Get your own way home. Find your own hotel. They, in fact, took Mr. Sencion Alvarez and his – the Kamala wife to a hotel, which I think ameliorates some of the outrageous conduct. It would have been more outrageous if they had said, start walking. Well, I take it it would have been terribly outrageous if they whacked the car and caused both occupants to suffer whiplash. That also would be outrageous, I think, Judge. That would be kind of in the excessive force category, wouldn't it? Probably would not have been intentional. But the actions of thumping the car and the high-speed chase up and down the highway are all actions that are outrageous because of the potential for harm. I see my time is up. Okay. Thank you. Cases, you will stand submitted. We are adjourned.
judges: Kozinski, Fisher, Tallman